UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EDWIN ARVELO,

        Petitioner,

v.                                                    Case No: 6:12-cv-1823-Orl-31KRS

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS
and ATTORNEY GENERAL, STATE OF
FLORIDA,

        Respondents.
_____/

## ORDER

This matter is before the Court following remand from the Eleventh Circuit Court of Appeals (Doc. 23). For the reasons set forth herein, the Court finds that Petitioner, Edwin Arvelo, is not entitled to relief on his claim for relief under 28 U.S.C. § 2254.

### I. INTRODUCTION

On August 15, 2006, Edwin Arvelo turned twenty-one. To celebrate, he stayed up all night drinking whiskey, smoking marijuana and snorting cocaine. On his way to work on August 16, he drove into a parking garage where his "urges" caused him to violently attack Carol Bergeron, choke her to the point of unconsciousness, and put her in his car with the intent of having forcible sex.[1] Fortunately for Bergeron, Arvelo's car would not

---

[1] This was not the first time that Arvelo had visited the garage looking for females. (Doc. 55 at 87).

start and when witnesses appeared he fled the scene. He was arrested a short time later and brought to the Maitland, Florida Police Department for questioning by Detective Collins. During that video-taped interview, Arvelo confessed to the crime and admitted that his intent in kidnapping Bergeron was to have forcible sex with her. The voluntariness of that confession is the subject of this proceeding.

## II.   PROCEDURAL BACKGROUND

On August 29, 2006, Arvelo was charged by information in Orange County, Florida with one count of kidnapping with intent to commit a felony, one count of attempted sexual battery with a deadly weapon or physical force, one count of aggravated battery causing great bodily harm, and one count of attempted first degree murder. (Doc. 15, Appendix F, at 112-15).

Ms. Catherine Conlon of the Orange County Public Defender's Office was appointed to represent Arvelo. On February 23, 2007, Conlon appeared with Arvelo in state court for a pre-plea conference. Under the Florida Sentencing Guidelines, Arvelo faced a minimum sentence of 168 months, and up to life in prison. Conlon's strategy was to argue for a downward departure based on Arvelo's personal history, mental illness and substance abuse. (Doc. 55 at 127). The state trial judge indicated that it was unlikely that he would grant such a departure under the circumstances of this case. (*Id.*).

In March, 2007, Arvelo entered an open plea. (*Id.* at 60). At his sentencing, Conlon presented evidence in mitigation and requested a downward departure. (*Id.* at 158). The motion was denied, and Arvelo was sentenced to sixty years imprisonment followed by

fifteen years of probation.² Arvelo's subsequent attempt to withdraw his plea was denied (Doc. 15, Appendix F, at 255-56), and his state court appeals were unsuccessful.

Arvelo initiated this case by filing a Petition for Writ of Habeas Corpus (Doc. 1) pursuant to 28 U.S.C. § 2254.  He later filed an Amended Petition for Writ of Habeas Corpus (Doc. 7), and a Second Amended Petition for Writ of Habeas Corpus (Doc. 11) ("Second Amended Petition").  Arvelo alleged four grounds in the Second Amended Petition, and he filed a supporting Memorandum of Law (Doc. 12).  The Court entered an Order (Doc. 18) denying the Second Amended Petition.

Arvelo filed a direct appeal, and the Eleventh Circuit Court of Appeals entered an opinion holding that "the state court's decision that Mr. Arvelo had waived his ineffective assistance claim by entering a plea was contrary to clearly established federal law . . . ." (Doc. 23 at 9).  The Eleventh Circuit Court of Appeals noted that

> Mr. Arvelo's federal habeas petition alleges that his lawyer was ineffective for failing to suppress a confession obtained in violation of his *Miranda* rights, and that this confession is the only piece of evidence supporting his convictions for kidnapping with intent to commit sexual battery and attempted sexual battery using physical force. This allegation, if true, would entitle Mr. Arvelo to habeas relief.

(*Id*. at 9-10).  Consequently, the Eleventh Circuit Court of Appeals remanded "to the District Court to hold an evidentiary hearing and reconsider Mr. Arvelo's claim in light of this opinion."  (*Id*. at 10).

---

² This is not a case of counsel's neglect.  Conlon conferred with her client, researched legal issues, negotiated with the state, took numerous depositions, hired a forensic psychologist, and presented witnesses at the sentencing.

3

At the evidentiary hearing, Arvelo presented the testimony of himself and John Schardine, who was the records manager for the City of Maitland. Respondents presented the testimony of Catherine Chein Conlon, who represented Arvelo in the underlying state criminal case, and Linda Drane Burdick, who was the assistant state attorney in the underlying criminal case. The Court has carefully reviewed the transcript of the August 16, 2006, interrogation of Arvelo at the Maitland Police Department by Detective Nick Collins,[3] (Respondents' Evidentiary Hearing Exhibit 6), and has viewed the videotape of the Interrogation. (Respondents' Evidentiary Hearing Exhibit 5).[4]

### III.   LEGAL STANDARD

To prevail on a claim of ineffective assistance of counsel, a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To satisfy the deficient-performance prong, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. The defendant must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *Id*. at 689.

---

[3] Hereinafter, referred to as the "Interrogation."

[4] The time-stamp noted on the transcript does not match the actual time on the videotape.

In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held that "the two part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." A defendant may satisfy the prejudice prong by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### IV.　ANALYSIS

#### A.　The Interrogation

Detective Collins conducted the Interrogation, which lasted over three hours.[5] Although understandably upset and often crying, at no point did Arvelo seem to be intoxicated, overly tired or intellectually impaired. Rather, Arvelo was lucid and had no difficulty understanding Detective Collins' questions, and he answered his questions coherently. There was no violence, threat of violence or other overt forms of coercion. Throughout the interview, Collins was calm and soft-spoken, often waiting patiently for Arvelo to respond. Indeed, the crux of Arvelo's argument is that Collins portrayed a false sense of concern for Arvelo's welfare.

Detective Collins mentioned to Arvelo that he could not "promise . . . anything." (Transcript of Interrogation at 4). However, Arvelo mentioned on several occasions that

---

[5] There were extended periods of time, however, when Arvelo was alone in the room.

5

he needed "help," and Detective Collins stated that "[w]e are going to start getting you down the path of getting you some help." (*Id*. at 5, 9). Detective Collins also encouraged Arvelo on several occasions to "man up" to his mistakes. (*Id*. at 10, 16, 37).

Clearly, Arvelo was remorseful for his actions, and he was aware that he had made a "big mistake." (*Id*. at 11, 14-15, 36). He wanted to talk to Detective Collins about the crimes because he wanted "to get all of this out of me and off my chest" and because he needed help. (*Id*. at 16, 18). In fact, Arvelo stated "I'm gonna open up, you know, 'cause I believe you can help me, and I want you to help me . . . . But I wanna open up because I want the help, you know." (*Id.* at 18). Arvelo discussed having perverted thoughts and urges and told Detective Collins that "I don't want to be like that no more." (*Id*. at 25).

When Arvelo asked Detective Collins if it was "necessary for [him] to go to prison, Detective Collins responded "I don't know. I don't know what happened." (*Id*. at 33). Detective Collins later explained "[w]e know a mistake happened today. We know it [is] something that, that you're definitely going to have to go to the jail about, but we don't know if it's something so big that you have to go to prison about . . . . I don't [know] that. I can't foresee that. I don't work for the state attorney's office." (*Id*. at 40).

6

Arvelo proceeded to describe the circumstances of the crimes. (*Id.* at 41-49). Arvelo admitted that is was his intention to have sex with the victim, that he told the victim "I'll kill you," and that the victim was "turning blue." (*Id.* at 58-61).[6]

**B.  Discussion**

The Eleventh Circuit Court of Appeals discussed that "a lawyer's performance only falls outside the range of competence demanded of counsel if she did not pursue a motion to suppress that would have affected the outcome of the case had the defendant rejected the plea and proceeded to trial." (Doc. 23 at 7). At the evidentiary hearing, Conlon offered no explanation with regard to her failure to file a motion to suppress Arvelo's confession. Further, she admitted that there would have been no "downside" to filing a motion to suppress. (Doc. 55 at 164). However, Arvelo admitted on cross-examination that Conlon had discussed filing a motion to suppress with him and that she felt it would be denied. (*Id.* at 103). Further, Arvelo stated in his affidavit, which was filed along with his initial Petition for Writ of Habeas Corpus, that Conlon told him that a motion to suppress would likely be denied. (Doc. 1-2 at 81).

The Eleventh Circuit Court of Appeals noted that "both the deficient performance and prejudice prongs of *Strickland* turn on the viability of the motion to suppress" and that "the likely success of Mr. Arvelo's motion to suppress will be of critical importance in our *Strckland* analysis." (Doc. 23 at 7, 9).

---

[6] Arvelo also claims that Collins told him he could get bail. However, the bail discussion came well after Arvelo's confession. (Transcript of Interrogation at 65.).

The Fifth Amendment right against self-incrimination prohibits courts from admitting into evidence a defendant's involuntary confession. *Dickerson v. United States*, 530 U.S. 428, 433 (2000). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). In assessing whether a confession is voluntary, courts must inquire "whether the will of the defendant had been overborne so that the statement was not his free and voluntary act . . . ." *Procunier v. Atchley*, 400 U.S. 446, 453 (1971). This question must be resolved "in light of the totality of the circumstances." (*Id.*). "Relevant considerations include the length and nature of the questioning, promises or threats made by investigators, and any deprivation of the suspect's essential needs. They also include the defendant's personal circumstances, including his age, education, intelligence, and mental condition, as well as his prior experience with the criminal justice system. *United States v. Jacques*, 744 F.3d 804, 809 (1st Cir. 2014) (citations omitted); *see also United States v. Bernal-Benitez*, 594 F.3d 1303, 1319 (11th Cir. 2010) (the Court should consider factors such as the accused's "lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights,[7] the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.") (citation and quotation omitted).

---

[7] Arvelo concedes that he was given his *Miranda* rights and notwithstanding, agreed to talk with Collins. Indeed, he seemed eager to do so.

8

At the time of the Interrogation, Arvelo was twenty-one years old, had obtained his GED, and was employed. (Transcript of Interrogation at 7-8, 11, 13). Arvelo also had prior experience with the criminal justice system. (*Id*. at 35-36).

Although the Interrogation was lengthy, it was not overbearing and contained no threats. At no time did Arvelo ask for the interview to end or indicate that he was tired, desired a break or was otherwise unwilling or unable to proceed; nor does the video suggest any type of physical coercion or deprivation of Arvelo's essential needs. Indeed, Collins gave him a long break and allowed him to make a phone call (*Id*. at 65-66, 71-73).

With respect to Arvelo's mental condition, there is no indication that Arvelo was confused or misunderstood the seriousness of the interrogation or the questions he was being asked. And, although he had been under the influence of drugs and alcohol the night before, the videotape shows no impairment of his mental faculties. In fact, Arvelo stated at the evidentiary hearing that he remembered "mostly everything" from the interrogation. (Doc. 55 at 35).

The only arguable claim of misconduct on the part of Detective Collins is the issue of offering Arvelo help with his problems. Throughout the interview, Arvelo repeatedly told Detective Collins that he needed help. Collins picked up on that theme and said:

> Think about it. What we're working on right now, is the first step in figuring out what kind of help you need. Okay, alright? Alright? So let's here [sic] it. What got us here today? What got me and you to meet today? And sometimes, what seems like a bad thing is not necessarily a bad thing as it can save you.

9

(Transcript of Interrogation at 12). But, Collins never offered assistance in exchange for his confession, nor did he promise anything with regard to potential sentences or the dismissal of charges if he confessed or made a statement. Collins' offer of help was vague and non-specific. In fact, Arvelo admitted that Detective Collins "did not make any specified promises of help" and that he could not make any promises. (Doc. 55 at 90-91).

In sum, Collins' unspecified offer to help Arvelo with his problem, in response to Arvelo's pleas for help, did not amount to the type of deceptive interrogation that would negate Arvelo's free will or impair his capacity for self-determination.[8] While Detective Collins may not have fully apprised Arvelo of the legal landscape, his interrogation technique was that of good police work, not inherently coercive police behavior.

---

[8] Indeed, it could be said that Arvelo's admission was a first step in dealing with the problem for which Arvelo sought help.

## V. CONCLUSION

Arvelo's trial counsel considered a motion to suppress and discussed the issue with Arvelo. It was her opinion that the motion would be denied, an opinion which, with the benefit of hindsight, was legally correct. Counsel cannot be held deficient for failing to file a non-meritorius motion. *Meeks v. Moore*, 216 F.3d 951, 968 (11th Cir. 2000) (affirming district court's assertion that counsel has no duty to bring forth non-meritorious motions). And, since such a motion would have been denied, Arvelo was not prejudiced by his counsel's failure to do so. Accordingly, under *Strickland*, Arvelo's ineffective assistance of counsel claim must be denied.

## VI. CERTIFICATE OF APPEALABILITY

This Court should grant an application for a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). However, the petitioner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Arvelo fails to demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Arvelo cannot show that jurists of reason would find this Court's procedural rulings debatable. Arvelo fails to make a substantial showing of the denial of a constitutional right. Thus, the Court

will deny Arvelo a certificate of appealability.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Second Amended Petition for Writ of Habeas Corpus (Doc. 11) is **DENIED**.

2. This case is **DISMISSED with prejudice**.

3. Petitioner is **DENIED** a certificate of appealability in this case.

4. The Clerk of the Court is directed to enter judgment in favor of Respondents and to close this case.

**DONE** and **ORDERED** in Orlando, Florida on February 3, 2016.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
OrlP-2 2/3

12